

FILED

Dec 11 2018, 10:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John M. Haecker
Squiller & Hamilton, LLP
Auburn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Angela N. Sanchez
Assistant Section Chief
Criminal Appeals
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Riley M. Randall, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 11, 2018 <br><br> Court of Appeals Case No. 18A-CR-1574 <br><br> Appeal from the DeKalb Superior Court <br><br> The Honorable Monte L. Brown, Judge <br><br> Trial Court Cause No. 17D02-1706-F3-4 |

**Crone, Judge.**

## Case Summary

Riley M. Randall appeals his conviction following a jury trial for level three felony robbery while armed with a deadly weapon. He contends that the trial court abused its discretion in instructing the jury. Finding no abuse of discretion, we affirm.

## Facts and Procedural History

The facts most favorable to the verdict indicate that on May 12, 2016, Randall purchased marijuana from Ron Wilkinson at Wilkinson's apartment in Garrett. Randall was short on cash, so he used a jar full of coins to purchase the marijuana. After leaving, Randall believed that Wilkinson had shorted him on the deal. Randall called Brandon Cardone, told him that Wilkinson had shorted him, and asked Cardone if he had a gun. Cardone informed Randall that he did have a gun. Cardone and another man, Zachary Burcham, who were both armed with guns, drove to meet Randall. Randall also called his friend, Jacob Johnston, and asked him to come with all three men to go to Wilkinson's apartment in order to "get a bag fixed" that "was light." Tr. Vol. 2. at 199. This meant that they were planning to go and "either get the monies [sic] worth back or get the rest of the marijuana." *Id*.

The men all got into Cardone's car, and Randall directed them to Wilkinson's apartment. When they arrived, Johnston decided to stay in the car while the others went inside the building. The men knocked on Wilkinson's door, and Wilkinson yelled for them to come in. Cardone and Burcham entered the

apartment, and Randall stood outside at the top of the stairs. Cardone and Burcham ordered Wilkinson to the ground at gunpoint and asked him where his money and drugs were. One of the men took Wilkinson's wallet. Once Wilkinson was on the ground and in a position where he would not be able to see and identify Randall, Cardone went outside and tapped on the wall to signal Randall to come in to help. Randall eventually entered the apartment and located Wilkinson's safe. Randall grabbed the safe, as well as the jar of coins he had used to purchase the marijuana, and the three men ran out of the apartment. They returned to Cardone's car and reported to Johnston what had happened. The men had also taken Wilkinson's cell phone but dropped it in the parking lot.

[4] All four men returned to the apartment where Randall had been staying and divided up the money and the drugs. Meanwhile, Wilkinson reported the crime to his apartment manager and called police. Wilkinson was later able to identify Randall from the apartment complex's surveillance video, but he did not recognize the other two men who entered his apartment. Police were unable to locate Randall that night. The next day, Randall went to the police station and told police that he had been kidnapped and forced to rob Wilkinson. He later told Johnston that they both should claim that Cardone and Burcham forced Johnston to force Randall to get them marijuana.

[5] The State charged Randall with level 3 felony robbery while armed with a deadly weapon. Prior to trial, Randall tendered a proposed jury instruction on the statutory defense of duress, asserting that the evidence would show that he

was an unwilling participant in the armed robbery. The trial court subsequently issued a written order denying the proposed instruction. Following a trial, the jury found Randall guilty as charged. The trial court imposed a nine-year sentence with two years suspended to probation. This appeal ensued.

## Discussion and Decision

[6] Randall asserts that the trial court abused its discretion in rejecting his tendered jury instruction regarding the statutory defense of duress. Thus, we must first determine whether the duress defense applies in the instant case. This is an issue of statutory construction, which we review de novo. *Jones v. State*, 87 N.E.3d 450, 454 (Ind. 2017). "Our goal is to determine the legislature's intent, which we do by following the plain and ordinary meaning of the statute's unambiguous language." *Id*.

[7] We will then review whether the trial court abused its discretion. The manner of instructing a jury is left to the sound discretion of the trial court. *Albores v. State*, 987 N.E.2d 98, 99 (Ind. Ct. App. 2013), *trans. denied*. We review the trial court's decision only for an abuse of that discretion. *Id*. On review of a trial court's decision to refuse a proposed jury instruction, we consider whether the instruction (1) correctly states the law, (2) is supported by the evidence, and (3) is covered in substance by other instructions that are given. *Id*. We consider jury instructions as a whole and in reference to each other. *Evans v. State*, 81 N.E.3d 634, 637 (Ind. Ct. App. 2017). We do not reverse the trial court unless the instructions as a whole misstate the law or mislead the jury. *Id*.

[8]     Randall claimed duress as a defense to armed robbery, and tendered a jury instruction that provided as follows:

> It is at issue whether the Defendant was acting under duress.
>
> It is a defense that the Defendant was compelled to commit the acts charged by threat of imminent serious bodily injury to himself or another person. Compulsion exists only if the force, threat, or circumstances would render a reasonable person incapable of resisting pressure.
>
> The defense does not apply to a person who recklessly, knowingly or intentionally placed himself in a situation where it was foreseeable that he would be subjected to duress.
>
> The State has the burden of proving beyond a reasonable doubt that the Defendant was not acting under duress.

Appellant's App. Vol. 2 at 35-36. The trial court rejected this instruction, concluding that, pursuant to Indiana Code Section 35-41-3-8(b)(2), the duress defense "does not apply to armed robbery cases." *Id*. at 43. Indeed, the duress statute provides,

> (a) It is a defense that the person who engaged in the prohibited conduct was compelled to do so by threat of imminent serious bodily injury to himself or another person. With respect to offenses other than felonies, it is a defense that the person who engaged in the prohibited conduct was compelled to do so by force or threat of force. Compulsion under this section exists only if the force, threat, or circumstances are such as would render a person of reasonable firmness incapable of resisting the pressure.

(b) This section does not apply to a person who:

(1) recklessly, knowingly, or intentionally placed himself in a situation in which it was foreseeable that he would be subjected to duress; or

(2) committed *an offense against the person* as defined in IC 35-42.

Ind. Code § 35-41-3-8(b)(2) (emphasis added).

[9] Randall concedes that robbery is indeed "an offense against the person" as defined by Indiana Code Section 35-42-5-1. Nevertheless, he asserts that because the jury was also instructed (and likely convicted him) on a theory of accomplice liability, the duress defense should have been available. We disagree.

[10] Indiana's accomplice-liability statute provides, in part, "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense[.]" Ind. Code § 35-41-2-4. Pursuant to this statute, an individual who aids another person in committing a crime is as guilty as the actual perpetrator. *Specht v. State*, 838 N.E.2d 1081, 1093 (Ind. Ct. App. 2005), *trans. denied* (2006). The statute does not set forth a separate crime, but merely provides a separate basis of liability for the crime that is charged. *Id.* at 1092. Accordingly, a person who aids another person in committing armed robbery is as guilty of armed robbery as the actual perpetrator.

[11] Contrary to Randall's assertion, the character of an offense as one "against the person" as defined in Indiana Code Section 35-42 in no way depends on

whether the defendant is the principal or an accomplice, or whether another inchoate basis of liability is alleged. *See, e.g.*, *Armand v. State*, 474 N.E.2d 1002, 1005 (Ind. 1985) (holding that attempted robbery is an offense against the person to which the duress defense is expressly excluded). Relying on our supreme court's discussion of the statutory abandonment defense in *Jones,* 87 N.E.3d 450, Randall makes a nuanced argument that, notwithstanding the clear prohibition against the use of a duress defense by one who commits an offense against the person, the legislature intended for the duress defense to be available to one who aids, induces, or causes an offense against the person. However, the abandonment defense, and the discussion thereof in *Jones*, is wholly inapposite. Unlike the duress statute, the abandonment statute specifically provides that abandonment may be asserted as a defense to crimes under Indiana Code Section 35-41-2-4 (aiding, inducing, or causing an offense), Indiana Code Section 35-41-5-1 (attempt), or Indiana Code Section 35-41-5-2 (conspiracy). Ind. Code § 35-41-3-10. Indeed, the abandonment defense "applies exclusively" to those three inchoate statutory offenses. *Jones*, 87 N.E.3d at 455. As stated above, the duress statute specifically prohibits its application to a certain type of offense, which includes the inchoate versions of that type of offense. *Armand,* 474 N.E.2d at 1005.

[12] Simply stated, the offense is the offense, and the legislature has plainly provided that the duress defense is unavailable to a person, such as Randall, who is alleged to have committed an offense against the person, regardless of the basis of liability. Therefore, duress was not available as a defense to Randall's charge

of armed robbery. The trial court did not abuse its discretion in rejecting his tendered duress instruction.

[13] Randall very briefly argues that the trial court abused its discretion in failing to simply give his tendered instruction but limit its application to the lesser-included offense of theft because, unlike robbery, theft is not an offense against the person as defined in Indiana Code Section 35-42. However, there is nothing in the record to indicate that Randall requested that the trial court give his duress instruction coupled with a limiting instruction, nor did he tender an instruction limiting the application of the defense.[1] "[I]t has long been established that a party cannot complain of incomplete or omitted instructions when he, himself, has not tendered any instruction on that issue." *Brittain v. State*, 565 N.E.2d 757, 760 (Ind. Ct. App. 1990) (quoting *Law v. State*, 273 Ind. 624, 626-27, 406 N.E.2d 1185, 1186 (1980)). Randall's failure to tender a limiting instruction results in waiver of the issue on appeal. *See id*.

[14] Affirmed.

Vaidik, C.J., and Mathias, J., concur.

---

[1] Although Randall's counsel mentioned during a pretrial hearing the potential of still pursuing the duress defense in the event the evidence presented at trial supported a jury instruction on the lesser-included offense of theft, it does not appear that he renewed such a request at the close of the evidence or tendered a limiting instruction.