## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 18 2020, 8:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Tyler D. Helmond
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bruce A. Bennett,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 18, 2020

Court of Appeals Case No.
20A-CR-646

Appeal from the St. Joseph
Superior Court

The Honorable Jane Woodward
Miller, Judge

Trial Court Cause No.
71D01-1812-MR-11

**Mathias, Judge.**

[1]     Bruce A. Bennett ("Bennett") was convicted in St. Joseph Superior Court of murder. Bennett appeals and claims that the trial court erred by rejecting his

request to instruct the jury regarding the lesser-included offense of reckless homicide.

[2] We affirm.

## Facts and Procedural History

[3] On the evening of December 14, 2018, Bennett went to a bar in South Bend, Indiana where he drank several alcoholic beverages with his friends. Bennett and his friends then proceeded to a local American Legion Post, where they drank even more. At some point in the evening, Bennett got in his car to go home. Instead of going home, however, Bennett drove his car down the sidewalk in from of the shopping center where the American Legion was located and struck a mailbox and newspaper box with his car, knocking the side mirror off his car. Bennet parked the car in the parking lot and got out, leaving the car running. He then reentered the American Legion Post.

[4] The victim in this case, Teddy Braun ("Braun"), was standing outside the Post with his friends and saw Bennett drive his car into the various obstacles and reenter the Post. He followed Bennett back into the Post and told his friends, "I've got this." Tr. Vol. 1, p. 163. Once inside, Braun sat Bennett down in a chair and restrained him by putting his arms around Bennett's shoulder, placing his arm across Bennett's chest, and holding Bennett's hands down. One of Bennett's friends approached and asked what was happening, but Bennett did not respond and instead stared at Braun. A woman approached the two men

and told them to "knock it off," to which Bennett replied "he [Braun] won't let me leave." *Id*. at 249–50.

[5] Bennett then pulled out a handgun, placed the barrel of the gun against Braun's chest, and fired one time. The bullet went through Braun's aorta and his left lung, causing a catastrophic, and ultimately fatal, injury. Braun fell to the floor, and other patrons disarmed Bennett and held him down until the police arrived. Bennett later told the police that he thought Braun was trying to kill him and that he "had to do what I had to do." Ex. Vol., State's Ex. 56. Bennett, who had served in the Marines, also stated, "I'm a f\*\*\*ing Marine. I was trained. You don't kill nobody unless you feel threatened. . . . I had no choice. . . . They kill me. I gotta do what I gotta do." *Id*.

[6] As a result of this incident, the State charged Bennett on December 17, 2018, with murder and also alleged that he had used a firearm in the commission of the crime, which is a sentence enhancement. A four-day jury trial was held on February 10–13, 2020. Bennett presented a claim of self-defense to the jury. Bennett, who testified that he has chronic obstructive pulmonary disease ("COPD"), claimed that Braun's actions made it hard for him to breathe and that he therefore believed he was going to die. Bennett testified that he put the gun against Braun's chest and shot him to stop Braun: "I knew what I was doing. I couldn't breathe. When you think you're dying as a last resort you're going to use deadly force." Tr. Vol. 2, p. 109.

[7] Toward the end of the trial, Bennet requested an instruction on the lesser-included offense of reckless homicide. Although the trial court instructed the jury regarding the defense of self-defense, it declined to give a reckless homicide instruction. The jury rejected Bennett's claim of self-defense and found him guilty of murder. Bennet then admitted to the sentence enhancement of using a firearm. The court subsequently sentenced Bennett to the minimum sentence of forty-five years, to which it added a five-year sentence enhancement. Bennett now appeals.

## Standard of Review

[8] The manner of instructing a jury is left to the sound discretion of the trial court. *Randall v. State*, 115 N.E.3d 526, 529 (Ind. Ct. App. 2018) (citing *Albores v. State*, 987 N.E.2d 98, 99 (Ind. Ct. App. 2013), *trans. denied*). On appeal, we review the trial court's decision only for an abuse of that discretion. *Id.* When it comes to the question of instructing the jury regarding a lesser-included offense, our supreme court has "developed a three-part test that trial courts should perform when called upon by a party to instruct on a lesser included offense to the crime charged." *Webb v. State*, 963 N.E.2d 1103, 1106 (Ind. 2012).

> First, the trial court must compare the statute defining the crime charged with the statute defining the alleged lesser included offense to determine if the alleged lesser included offense is inherently included in the crime charged. Second, if a trial court determines that an alleged lesser included offense is not inherently included in the crime charged under step one, then it must determine if the alleged lesser included offense is factually included in the crime charged. If the alleged lesser included

offense is neither inherently nor factually included in the crime charged, the trial court should not give an instruction on the alleged lesser included offense. Third, if a trial court has determined that an alleged lesser included offense is either inherently or factually included in the crime charged, it must look at the evidence presented in the case by both parties to determine if there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater. [I]t is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense if there is such an evidentiary dispute.

*Id.* (citations and internal quotations omitted).

## Discussion and Decision

[9] Bennett insists that there was a serious evidentiary dispute regarding his *mens rea*. Murder is statutorily defined as knowingly or intentionally killing another human being. Ind. Code § 35-42-1-1(1). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." I.C. § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). In contrast, "[r]eckless homicide is defined, unsurprisingly, as recklessly killing another human being." *McDowell v. State,* 102 N.E.3d 924, 931 (Ind. Ct. App. 2018), *trans. denied* (citing Ind. Code § 35-42-1-5). "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of

conduct." I.C. § 35-41-2-2(c). Thus, "the only distinguishing feature in the elements of murder and reckless homicide is the *mens rea* required of each offense." *McDowell*, 102 N.E.3d at 931 (citing *Evans v. State*, 727 N.E.2d 1072, 1082 (Ind. 2000)). Accordingly, reckless homicide is an inherently included offense of murder. *Id.*

[10] Bennett argues that there was a serious evidentiary dispute regarding whether he acted recklessly when he shot and killed Braun. Bennett points to the evidence that he has COPD, that Braun held Bennett down by placing his arm on his chest, that Bennett had difficulty breathing, that Braun refused to stop despite being asked to do so by bar patrons, and that Bennett did not know Braun, thought he was going to die, and did not intend to kill anyone. *See* Appellant's Br. p. 11. This evidence, Bennett claims, shows that there was a serious evidentiary dispute regarding Bennett's *mens rea*. We disagree.

[11] Even if Bennett did not intent to kill Braun, he at the very least acted knowingly. That is, by placing a handgun against Braun's chest and pulling the trigger, Bennett was aware of a high probability that Braun would die as a result; he did not merely act recklessly. "When one aims a gun at another person's shoulder or upper chest area and fires it, he or she is reasonably aware of a high probability that the shot may kill." *Etienne v. State*, 716 N.E.2d 457, 463 (Ind. 1999).

[12] Under these facts and circumstances, we conclude that the trial court did not abuse its discretion by refusing to instruct the jury with regard to the lesser-

included offense of reckless homicide because there was no serious evidentiary dispute with regard to Bennett's *mens rea*, i.e., whether he acted recklessly instead of knowingly. *See Wadsworth v. State*, 750 N.E.2d 774, 776 (Ind. 2001) (holding that there was no serious evidentiary dispute regarding defendants *mens rea* where defendant fired a gun at close range into victim's face); *Sanders v. State*, 704 N.E.2d 119, 121–23 (Ind. 1999) (holding that there was no serious evidentiary dispute regarding whether defendant acted recklessly instead of knowingly where defendant fired a handgun directly at the victim at close range); *Etienne*, 716 N.E.2d at 463 (holding that there was no serious evidentiary dispute regarding defendant's *mens rea* where he aimed a gun at the victims upper chest and fired); *Newman v. State*, 751 N.E.2d 265, 269 (Ind. Ct. App. 2001) (holding that there was no serious evidentiary dispute regarding whether the defendant acted recklessly instead of knowingly where he pointed a gun at the victim's shoulder and fired).

[13]     Bennett's citation to *Webb, supra*, is unavailing. Our supreme court emphasized in *Webb* that, when determining whether there is a serious evidentiary dispute that justifies the giving of an instruction on a lesser-included offense, the court must look to the evidence presented by both parties. 963 N.E.2d at 1107. And in *Webb*, considering the evidence presented by the State, there was evidence that the defendant and his friends had been playing with a gun, that the weapon had been loaded and unloaded at different points in the evening, that the defendant had pointed it playfully at different people, and that, after he shot the

victim, the defendant stated that he "didn't mean to shoot [the victim], that it was an accident." *Id.* at 1108.

Here, in contrast, to stop Braun from restraining him, Bennet shot directly into Braun's chest, which is knowing, not reckless, behavior. *See Sanders*, 704 N.E.2d at 122 ("There is no evidence that [the defendant] was shooting at the crowd on the stairs at random; rather, he shot only at [the victim]."). Because there was no serious evidentiary dispute as to whether Bennett acted recklessly instead of knowingly, the trial court properly denied his request to instruct the jury regarding the lesser-included offense of reckless homicide.

## Conclusion

The trial court did not err by declining to instruct the jury on the lesser-included offense of reckless homicide. We therefore affirm the judgment of the trial court.

Affirmed.

Bradford, C.J., and Najam, J., concur.